### Administration of Solid Fuel Sales Act

**492**

RENO, Attorney General, January 5, 1940.—This department is in receipt of your communication of December 5, 1939, relating to the Act of July 19, 1935, P. L. 1356, 76 PS §342, et seq. This is an act to regulate the sale and delivery of solid fuel. You request answers to certain specific questions which have arisen in the administration of the legislation mentioned. These questions are:

1. Under section 5 of this act, do the following officers have equal authority: State inspectors, county inspectors of weights and measures, also the inspectors and assistant inspectors of weights and measures appointed by boroughs, first, second, and third class cities?

2. Should a truck driver refuse to accompany the inspector, does the inspector have authority to arrest said driver without obtaining a warrant?

3. When gross weight is obtained, the truck driver at times uses some ruse to delay delivery. Can the inspector compel the driver to proceed immediately with delivery or to unload the truck immediately in order to prove correct weight?

4. When a faulty weight slip is found, who should be prosecuted, the truck driver, the weighmaster, or both?

Section 5 of the Act of 1935, supra, reads as follows:

"Section 5. Any weights and measures official of this State, or any local government of this State, who finds any quantity of solid fuel ready for or in process of delivery, may direct the person in charge of the solid fuel to convey the same to the nearest available accurate scales designated by said official. Such official shall thereupon determine the weight of the solid fuel, and the vehicle on

which it is carried, and shall direct such person in charge to return to such scales forthwith upon unloading the solid fuel, and upon such return, the official shall determine the weight of the vehicle without load. No person in charge of a vehicle containing such solid fuel, or from which such solid fuel has been unloaded, shall fail to take the vehicle, upon the direction of the weights and measures official, to scales as aforesaid, or refuse to permit the solid fuel or vehicle to be weighed by such official."

With reference to question no. 1, above, it is clear from the text of section 5 of the act above set forth in full, that any and all of the officials enumerated in question no. 1 have equal authority to perform the duties imposed by this section.

The answer to your question no. 2, as to whether an inspector has authority to arrest a truck driver who refuses to accompany the inspector, without first obtaining a warrant is also clear. While it says, in section 5 of the act, that no person in charge of a vehicle containing solid fuel shall fail to obey the directions of the inspector to take the vehicle to the scales, nowhere in said section nor in the rest of the act is there any authority conferred upon such inspector to arrest the recalcitrant truck driver without first obtaining a warrant. Section 8 of the act provides penalties for any person violating the same, which penalties are applied after summary conviction before a magistrate. The inference from this is that the inspector must first swear out an information before a magistrate against a person offending, such as a driver who refuses to accompany him, and obtain the issuance of a warrant for the offender's apprehension, before the latter may be arrested.

This conclusion is fortified by the rule at common law reviewed in 1 Sadler, Criminal Procedure in Pennsylvania (2d ed., 1937), pp. 91 to 98, that a peace officer may make an arrest without a warrant where an offense has been committed within the officer's sight; when an offense has been committed and the offender is escaping; and

where a felony has been committed, or the officer has reasonable ground to believe that one has been recently committed. A peace officer may also arrest without warrant where a misdemeanor has been committed within his view, or where the officer is in fresh pursuit of one who has just committed a misdemeanor, provided the offense amounts to a breach of the peace.

Various statutes confer the power of arrest without warrant upon peace officers in certain specific cases enumerated in such statutes. There is also statutory authority for certain law enforcement agents, such as inspectors of the Department of Health, game, fish, fire and forest wardens, and agents of societies for the prevention of cruelty to animals, to make arrests without warrants under certain circumstances.

Unless, therefore, the act under discussion specifically empowers inspectors to make arrests without warrants, which it does not; or unless an offense under the act constitutes a breach of the peace, which it may or may not; inspectors have no authority to arrest without a warrant.

Your question no. 3 inquires whether an inspector may compel a truck driver immediately to deliver coal after having the same weighed, or in the alternative, immediately to unload the truck, so that as a result the inspector may ascertain the weight of the empty truck.

Section 5 of the act above quoted provides that, after a truck and its contents are weighed, the inspector shall direct the person in charge thereof "to return to such scales forthwith upon unloading the solid fuel," and upon such return the inspector shall determine the weight of the truck. There is nothing in this section or in any other part of the act which compels a truck driver to unload immediately. The only thing he is compelled to do is to return the empty truck to the scales for weighing immediately after unloading it. It is quite possible a driver might have his truck and load weighed at nightfall and not deliver the coal until the next morning. About the only rule to guide inspectors here is that a truck should

be unloaded within a reasonable time after weighing, taking all circumstances into consideration.

Question no. 4 of your inquiry asks who should be prosecuted when a faulty weight slip is discovered—the truck driver or the weighmaster, or both. Section 7 of the act provides that it shall be unlawful for any weighmaster to issue a false or incorrect weight certificate, and that it shall be unlawful for any person knowingly to use such certificate. Section 8 of the act provides that any person violating any provision thereof will be amenable to the penalties therein provided. Consequently, either the truck driver or the weighmaster, or both of them, may be prosecuted when a faulty weight slip is discovered. It would seem that the circumstances surrounding the case should indicate the proper procedure in each instance.

As a result of the foregoing, it is the opinion of this department and you are accordingly advised that:

1. Under section 5 of the Act of July 19, 1935, P. L. 1356, inspectors of weights and measures appointed by the Commonwealth, counties, boroughs, cities of the first, second, and third classes, and the respective assistants of such inspectors, have equal authority to enforce the provisions thereof.

2. An inspector of weights and measures has no authority under said act to make an arrest without first obtaining a warrant, should the driver of the truck containing solid fuel, as defined in said act, refuse to accompany such inspector on demand.

3. An inspector of weights and measures cannot, under said act, compel the driver of a truck loaded with solid fuel, as defined in said act, immediately to deliver said fuel or to unload said truck, after the truck and the fuel are weighed together.

4. Either the driver of a truck containing solid fuel, as defined in said act, or a weighmaster, as defined in said act, or both, may be prosecuted for possession or for issuance of a faulty weight slip.